IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | : | Case No. **3:20-cr-51** |
| Plaintiff, | : | **JUDGE MICHAEL J. NEWMAN** |
| vs. | : | |
| **KEVIN A. KOVACS,** | : | **THE UNITED STATES' POST-HEARING BRIEF SUBMITTED IN OPPOSITION TO THE DEFENSE** |
| Defendant. | : | **SUPPRESSION MOTION (DOC. #30)** |

Now comes the United States by and through the undersigned counsel with its Post-Hearing Brief in Opposition to the Defense Suppression Motion. (Doc. #30).

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney


s/Dwight K. Keller
DWIGHT K. KELLER (0074533)
Assistant United States Attorney
Attorney for Plaintiff
Federal Building
200 West Second Street, Suite 600
Dayton, Ohio 45402
(937) 225-2910
Fax: (937) 225-2564
Dwight.Keller@usdoj.gov

## STATEMENT OF THE CASE

On April 15, 2020, Special Agent (SA) Andrea R. Kinzig of the Federal Bureau of Investigation (FBI), swore out a criminal complaint against the defendant **KEVIN A. KOVACS**, (hereinafter referred to as **"KOVACS"** or "the defendant"). (*See* Case No. 3:20-mj-180). (Doc. #3). As a result, then U. S. Magistrate Judge Michael J. Newman issued an arrest warrant for the defendant. (Doc. #4). On June 2, 2020, a Grand Jury sitting in Dayton, Ohio returned a ten-count indictment against the defendant. (*See* Case No. 3:20-cr-51). (Doc. #23). Counts 1-3 allege production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e); Count 4 alleges distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); Count 5 alleges receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); Counts 6-8 allege transportation of child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1); Count 9 alleges possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2); and Count 10 alleges witness tampering in violation of 18 U.S.C. §§ 1512(b)(3) and (c)(2).

On September 17, 2020, **KOVACS** filed a motion to suppress certain evidence derived from two state search warrants: one that was executed on December 19, 2019 at his Fairborn, OH residence, and a second that was executed on December 20, 2019 concerning three electronic devices previously seized by law enforcement from the defendant's home. (Doc. #30).

On May 13, 2021, this Court convened an evidentiary hearing to consider the merits of said defense suppression motion. (Page references to the transcript of this hearing (Doc. #45) hereinafter appear as "Tr."). On July 1, 2021, the defense filed its post-hearing brief. (Doc. # 46). The Government responds herein with its post-hearing brief in opposition.

## STATEMENT OF FACTS

On December 18, 2019, Detective Shane Hartwell of the Fairborn PD applied for and was granted a search warrant (hereinafter referred to "Search Warrant #1") for defendant's 1445 Sunset Drive, Fairborn, OH residence from Greene County Common Pleas Court Judge Stephen A. Wolaver. (Tr. @ 9-11; GE #1). This warrant was executed the following day. (Tr. @ 12-13). The return for Search Warrant #1 was ultimately filed with the Common Pleas Court Clerk's Office on January 15, 2020. (Tr. @ 13-14). Among the various items seized from defendant's residence were three Apple iPhones. (Tr. @ 11, 13). On December 20, 2019, Detective Hartwell applied for and received a second search warrant from Judge Wolaver (hereinafter referred to as "Search Warrant #2") concerning the three Apple iPhones collected from the defendant's residence. (Tr. @ 11-13, 19; GE #2). Search Warrant #2 was executed on the date of its issuance. (Tr. @ 14, 19). An initial forensic examination of these three iPhones was performed by Detective Robert Bell of the West Carrollton PD. (Tr. @ 14, 20, 37). A more sophisticated follow-up forensic analysis was performed by the FBI's Laboratory in Quantico, Virginia on one of the seized phones, to wit: the Apple iPhone x10. (Tr. @ 15-17, 37). Upon completion of the FBI examination, the return for Search Warrant #2 was filed with the Common Pleas Court Clerk's Office on April 30, 2020. (Tr. @ 17-18).

Prior to January 2020, the FBI played no substantive role in either obtaining or executing either warrant. (Tr. @ 15-16). In early January 2020, the FBI assumed primary investigative jurisdiction in this case. (Tr. @ 15).

**ISSUES:**

I. **DID SEARCH WARRANT #1 COMPLY WITH THE REQUIREMENTS OF THE FOURTH AMENDMENT?**

II. **DID SEARCH WARRANT #2 COMPLY WITH THE REQUIREMENTS OF THE FOURTH AMENDMENT?**

III. **WOULD A FAILURE TO COMPLY WITH THE PROMPT FILING REQUIREMENTS OF O.R.C. § 2933.241 JUSTIFY SUPPRESSION OF THE FRUITS OF EITHER SEARCH WARRANT IN A FEDERAL PROSECUTION?**

IV. **WAS THE FBI JURISDICTIONALLY RESTRICTED IN ANY WAY FROM RELYING ON SEARCH WARRANT #2 TO SEARCH THE SEIZED APPLE iPHONE X10?**

**DISCUSSION OF LAW**

1. The Fourth Amendment provides that: "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

2. The burden of proof rests upon the defendant to demonstrate either a constitutional or statutory right justifying suppression of evidence. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

3. *Legal standing* under the Fourth Amendment only exists when the moving party establishes both a subjective and reasonable expectation of privacy in the area to be searched, or in the evidence to be seized. *Minnesota v. Carter*, 525 U.S. 83, 91 (1998).

4. Legal standing to challenge the admissibility of seized evidence requires an initial showing that a personal constitutional right was violated. *United States v. Salvucci*, 448 U.S. 83, 86-87 (1980); see also *Rakas v. Illinois,* 439 U.S. 128, 134 (1978).

5. A *search* is a governmental intrusion onto private property for the purpose of obtaining information. *United States v. Jones,* 132 S.Ct. 945, 950 (2012).

4

6. A *seizure* is a governmental intrusion that meaningfully interferes with an individual's possessory interest. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

7. *Probable cause to search* is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Sixth Circuit has defined probable cause as a reasonable ground for belief, supported by less than prima facie proof but more than mere suspicion. There must be a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place. *United States v. Howard*, 621 F.3d 433, 453 (6th Cir. 2010).

8. Probable cause is required to justify most governmental intrusions upon interests protected by the Fourth Amendment. *Ornelas v. United States,* 517 U.S. 690, 695 (1996). Probable cause is considered "a practical, nontechnical concept" based on "common-sense conclusions about human behavior." *Gates,* at 231. It has been described as "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of rules," *Id.* at 232. Its existence is determined by analyzing "the totality of the circumstances" surrounding the intrusion. *Id.* at 238. The Supreme Court has opined that:

> Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision [whether to issue a warrant]. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause."

*Id.* at 235 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

9. Under the Fourth Amendment's *warrant requirement*, an impartial judicial official must assess whether law enforcement officials have properly established probable cause to conduct a search for evidence, contraband, or instrumentalities, and fruits of a crime. *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 301-02 (1967). Before any magistrate can lawfully issue a

warrant, a supporting affidavit must be presented that sets forth "[that] there is a fair probability that contraband or evidence of crime will be found in a particular place." *Gates*, 462 U.S. at 213. A supporting affidavit must demonstrate probable cause in support of finding evidence at a particular location. *Kirk v. Louisiana,* 536 U.S. 635, 638 (2002). A review of the sufficiency of the supporting affidavit is limited to "the four corners" of the affidavit. *United States v. Jackson,* 470 F.3d 299, 306 (6th Cir. 2006). A magistrate's decision to issue a search warrant is traditionally afforded great deference. Reviewing courts must only examine whether the issuing magistrate had a "substantial basis" for concluding the existence of probable cause. *Gates,* 462 U.S. at 238-39.

10. Under the Supremacy Clause, of the U. S. Constitution., *See Art. VI, cl. 2,* mere violations of state law will not justify suppression of evidence in federal court proceedings. *See United States v. McNulty,* 729 F.2d 1243, 1251 (10th Cir. 1983) (citing *United States v. Dudek,* 530 F.2d 684, 690 (6th Cir. 1976). Federal Courts are deemed the final arbiters of the scope of all federal constitutional rights. *See Mars v. Mounts,* 895 F.2d 1348, 1152 (11th Cir. 1980) (citing e.g. *Reynolds v. Sims,* 377 U.S. 533, 566 (1964)). If a state law conflicts or interferes with a federal law, the state law is invalidated *Rose v. Arkansas State Police,* 479 U.S. 1,3 (1986).

11. Law enforcement officers generally must secure a warrant before searching digital information stored on an arrestee's cell phone. *Riley v. California,* 134 S.Ct. 2473, 2485 (2014). This was accomplished in subject case.

## ARGUMENT

*Both Search Warrants Fully Complied with Fourth Amendment Requirements*

12. In subject case, both warrant applications were fully supported by detailed sworn affidavits prepared by Detective Hartwell that established the predicate probable cause to search. (GE #1 and #2).

13. Both supporting affidavits provided Judge Wolaver with a detailed chronological background of how in December 2019 officials at the Fairborn PD received an investigative referral from Cuyahoga County Prosecutor's Office on behalf of the Internet Crimes Against Children (ICAC). (*See* GE #1, ¶¶ 2-5; GE #2, ¶¶ 2-5). This referral stemmed from two separate complaints received by the National Center for Missing and Exploited Children (NCMEC). The first complaint was received in 2017 from an internet cloud file sharing service known as *Dropbox*. This complaint indicated that certain child pornography images and videos had been uploaded onto a particular suspect's account. In 2019, a second similar complaint was received from a social media website known as *MeWe*.

14. Detective Hartwell's supporting affidavits specifically outlined how ICAC investigators were able to factually link the defendant to both said complaints based upon an identical username of "Key Kovy". Both *Dropbox* and *MeWe* provided investigators with the IP addresses used to access these respective accounts. Both accounts had IP addresses listed in Fairborn, Greene County, Ohio. The *MeWe* account had a listed telephone number that returned to the defendant's 1445 Sunset Drive, Fairborn, Ohio residence. The *Dropbox* account had a listed an email address of key_kovy@yahoo.com. Investigators were able to specifically tie this email address also to the defendant and his Fairborn, OH residence.

15. Detective Hartwell's two supporting affidavits identified and described certain common characteristics and *modus operandi* employed by child pornography collectors and traffickers. He indicated that individuals who collect child pornography: "almost always possess and maintain their 'hard copies' of child pornographic images and reference materials (e.g. mailing and address lists) in a private and secure locations. . . . Typically, these materials are kept at the collector's residence for easy access and viewing. Collectors usually place high value on their materials because of the difficulty, and legal and social danger, associated with acquiring

7

them. As a result, it is not uncommon for collectors to retain child pornography for long periods of time, even for years." (*See* GE #1, ¶10d; GE #2, ¶11d ).

16.     Detective Hartwell's initial affidavit stated: "Subscribers to websites that are primarily designed to provide child pornography have a strong likelihood of being collectors of child pornography. This high degree of correlation between subscription and collection behavior has been repeatedly confirmed during several recent nationwide law enforcement initiatives." (*See* GE #1, ¶10g).

17.     The defense discusses in its post-hearing memorandum the fact that Detective Hartwell sought the professional advice of the Chief of the Child Advocacy Division at Dayton's Children's Hospital to better determine the age of the suspect images contained in the *MeWe* files. (Doc. #46 at PAGEID #256-57, 261). It correctly states the medical expert opined that "there was a strong possibility that they were under 18." (*Id.*). The defense memorandum however, inexplicably neglects to point out that there was absolutely no question as to the age of certain child victims depicted in the *Dropbox* images, to wit: "a young infant that was being anally and vaginally raped while screaming." (Doc. #46 at PAGEID #261-62).

18.     Based upon the facts contained in both supporting affidavits, Judge Wolaver properly and reasonably determined that probable cause existed to grant both requested search warrants.

*Both Search Warrants Complied with the Requirements of O.R.C. § 2933.241*

19.     Once a federal criminal court has determined that Fourth Amendment standards have been complied with, no state court or state case law can override that determination.

20.     Under Ohio Rev. Code § 2933.241: "The [search warrant] return shall be made promptly and shall be accompanied by a written inventory of any property taken." The return for Search Warrant #1 was filed 27 days following its initial execution on December 19, 2019. The return for Search Warrant #2 was filed 4 ½ months days following its initial execution on

8

December 20, 2019.  Based on Detective Hartwell's unrebutted testimony, both search warrant returns were promptly and reasonably filed following completing of all forensic analysis in accordance with his lengthy prior experience, and established past practices and procedures employed by the Greene County Common Pleas Court.  (Tr. @ 14, 17-18).

21.     In federal prosecutions, federal standards are applied to determine the admissibility of evidence.  *Wolfe v. United States,* 291 U.S. 7 (1934).  The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.  *Elkins v. United States,* 364 U.S. 206, 223-24 (1960).

22.     The Sixth Circuit has held that the filing of a search warrant return is considered a mere "ministerial act".  A state police department's failure to abide by a state procedural rule will not implicate the federal exclusionary rule under the Fourth Amendment.  *See Dudek,* 530 F.2d at 691; *United States v. McKenzie,* 446 F.2d 949, 954 (6th Cir. 1971) (ruling that the filing of a warrant return – was a "ministerial" act that, absent a showing of prejudice, did not otherwise void the warrant); *Evans v. United States,* 242 F.2d 534, 536 (6th Cir. 1957) (same).

23.     The specific purpose of the exclusionary rule is to deter perceived police misconduct.  *Mapp v. Ohio,* 367 U.S. 643 (1961).  When a police officer reasonably relies upon an otherwise properly issued warrant, the evidence should be admissible, even if the court later determines that probable cause does not exist.  *See United States v. Leon,* 468 U.S. 897 (1984).

24.     The defense post-hearing memorandum's exclusive reliance upon Ohio state case law to support its motion is irrelevant in resolving the asserted Fourth Amendment challenges in this federal criminal proceeding.  Compliance with unique state procedural requirements is of no legal consequence in a federal criminal proceeding such as the subject case.

*The FBI Properly Relied Upon Search Warrant #2 to Search the Apple iPhone x10*

25. The Constitution permits the federal government and the States to pursue dual investigations and dual charges, *see Heath v. Alabama,* 474 U.S. 82, 89 (1985), it also permits the two sovereigns to coordinate law enforcement efforts. *United States v. Castro,* 881 F.3d 961, 967 (6th Cir. 2018). In the Sixth Circuit, federal law enforcement officers may help state officials search for evidence of crime in connection with a state warrant so long as they are searching for the same evidence as the state officers and the same evidence authorized by the state warrant. *Id.;* and *United States v. Garcia,* 496 F.3d 495, 509-510 (6th Cir. 2007).

26. Federal officers may rely on a state warrant to conduct a follow-up search of a previously seized cell phone without obtaining a second warrant so long as the search does not exceed the probable cause articulated in the original warrant. *Castro,* 881 F.3d at 967. This is true even when officers conduct an initial search soon after the device's seizure, and then waits months or years to conduct a more intensive subsequent search. *United States v. Johnston,* 789 F.3d 934, 941-43 (9th Cir. 2015).

27. In subject case, Search Warrant #2 was specifically issued in support of an ongoing state criminal investigation into alleged pandering of sexually oriented matter involving minors in violation of O.R.C. § 2907.322; pandering obscenity involving a minor in violation of O.R.C. § 2907.321; and the illegal use of a minor person in nudity-oriented material or performance in violation of O.R.C. § 2907.323. These state offenses mirror the subject federal child pornography charges that are set forth in the defendant's federal indictment. (Doc. #23).

28. In the Sixth Circuit, federal officers may assist state law enforcement officials in searching for criminal evidence in connection with a state warrant so long as they search for the same evidence authorized by the state warrant. *United States v. Garcia,* 496 F.3d 495, 509-10 (6th Cir. 2007).

29. A mere violation of state procedural law is insufficient to suppress evidence in federal courts. *See United States v. McNulty,* 729 F.2d 1243, 1251 (10th Cir. 1983) (citing *Dudek,* 530 F.2d at 690). Federal courts "are the final arbiters of the scope of federal constitutional rights." *Mars v. Mounts,* 895 F.2d 1348, 1152 (11th Cir. 1980) (citing *Reynolds v. Sims,* 377 U.S. 533, 566 (1964). States have no authority to restrict federally protected rights *Cooper v. Aaron,* 358 U.S. 1, 18, 78 (1958).

30. As such, the FBI properly and lawfully relied upon Search Warrant #2 to perform its forensic analysis on the defendant's Apple iPhone x10 at its Quantico laboratory.

## **CONCLUSION**

31. In subject case, all the seized evidence was lawfully obtained in accordance with Fourth Amendment standards.

32. Application of the exclusionary rule would be inappropriate in subject case because: (1) both state search warrants fully complied with all the requirements of the Fourth Amendment; (2) the ministerial act of filing the return occurred *after* the search warrants were properly approved and executed. As such any perceived after the fact state procedural defects cannot and should not serve as a basis to invalidate otherwise lawful warrants; (3) state law does not control in federal criminal proceedings; (4) Detective Hartwell did not violate the cited state procedural law; and (5) even if the state procedural law was violated, there is no legal precedence justifying the suppression of seized evidence in either a state or federal court since no prejudice can or has been shown.

33. In the *Dudek* case the Sixth Circuit was confronted with a similar factual scenario as that appears in subject case. *See* 530 F.2d at 684. In *Dudek,* the search warrant return was filed 11-months (as opposed to 4 ½ months in subject case) after the execution of a search warrant. The filing of that return occurred two weeks prior to trial. *Id.* at 686. In subject case, the 4 ½ month delay in filing the return in Search Warrant #2 was due to the extended time period required

11

to fully complete the FBI's follow-on forensic analysis of the single Apple iPhone x10. (Tr. @ 17-18). Absent any showing of prejudice, failure to file a search warrant return does not legally void an otherwise proper search warrant. *Evans v. United States,* 242 F.2d 534, 536 (6th Cir. 1957). In *Dudek*, the Court specifically held that non-constitutional, nonprejudicial and inadvertent failures to follow Ohio post-search and seizure requirements do not trigger the application of the federal exclusionary rule. 530 F.2d at 691.

34. Even if this Court were to determine otherwise, the good-faith exception to the exclusionary rule would clearly apply in subject case. *See Leon,* 468 U.S. at 918-21.

35. Both challenged search warrants were properly and legally issued by Judge Wolaver. The supporting affidavits for both search warrants fully satisfied the probable cause requirements under the Fourth Amendment. Both warrants were promptly filed in accordance with the established local and state practices and procedures. Under the Supremacy Clause, federal courts are charged with the responsibility of independently assessing all Fourth Amendment issues and challenges brought in federal proceedings. As the moving party, the defense has failed to carry its burden of proof. As such the defense suppression motion should be denied.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney

s/Dwight K. Keller
DWIGHT K. KELLER (0074533)
Assistant United States Attorney
Attorney for Plaintiff
Federal Building
200 West Second Street, Suite 600
Dayton, Ohio 45402
(937) 225-2910
Fax: (937) 225-2564
Dwight.Keller@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the attached Post Hearing Brief was electronically filed and served upon all defense counsel of record via the CM/ECF system on this 7th day of July, 2021.

s/Dwight K. Keller
DWIGHT K. KELLER (0074533)
Assistant United States Attorney