UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,                                         Case No. 3:20-cr-51

vs.

KEVIN A. KOVACS,                        District Judge Michael J. Newman

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (DOC. NO. 30)**

The grand jury indicted Defendant Kevin A. Kovacs on several counts including, but not limited to, production, distribution, receipt, transportation, and possession of child pornography. Doc. No. 3. This case is before the Court upon Defendant's motion to suppress, the record and evidence admitted during a hearing on the motion to suppress, and the parties' post-hearing memoranda. Doc. Nos. 30, 46, 47.

**I.**

Officers apprehended Defendant following the issuance of an arrest warrant on April 15, 2020. Doc No. 4. Many of the events leading to his arrest are documented in the affidavit and testimony provided by Detective Shane Hartwell. Detective Hartwell has been a detective with the Fairborn Police Department for five years and has been a sworn officer for over 22 years. Doc. No. 45 at PageID 228-29.

The investigation into Defendant began when the Ohio Internet Crimes Against Children Task Force ("ICAC") referred a tip they received -- from the National Center for Missing and Exploited Children's ("NCMEC") Cyber Tipline regarding child pornography -- to Detective Hartwell at the Fairborn Police Department. Doc. No. 3-1 at PageID 11. In July of 2017, Dropbox

Inc. (an online file hosting service)[1] filed a report with NCMEC's Cyber Tipline regarding approximately 463 computer files that were suspected to contain child pornography or child exploitation. *Id.* The files were located in a Dropbox account associated with the email address, key_kovy@yahoo.com ("Dropbox Account"). *Id.* Dropbox Inc. provided the 463 files to NCMEC, and an NCMEC analyst then sent those files, along with the Cyber Tipline report, to the Cuyahoga County, Ohio ICAC. *Id.* The Cuyahoga County ICAC determined that the suspected user of the Dropbox Account resided in Fairborn, Ohio. *Id.*

Subsequently, the NCMEC Cyber Tipline received two additional reports from MeWe (another file sharing service)[2] that were associated with the user name "Key Kovy." *Id.* at PageID 11-12. MeWe's two reports included a combined seven suspected child pornography and child exploitation files that were located in the MeWe account ("MeWe Account 1") and also identified a second MeWe account that utilized the same email address (key_kovy@yahoo.com) as the Dropbox Account ("MeWe Account 2"). *Id.* at 12. MeWe's report identified the account user's telephone number and the IP address used to log into one of the MeWe accounts on September 6, 2019. *Id.*

In October 2019, the Cuyahoga County ICAC forwarded the Cyber Tipline reports and files from Dropbox and MeWe to the Fairborn Police Department for further investigation. *Id.* at PageID 11. Detective Hartwell reviewed the report and associated files and, based on his training and experience, suspected that many of the files depicted minors engaging in sexually explicit

---

[1] Dropbox accounts provide users with cloud storage, file synchronization, personal cloud, and client software. Doc. No. 3-1 at PageID 8. Dropbox creates a special folder on the user's computer, and the contents of the folder are synchronized to Dropbox Inc's servers and to other computers and devices onto which the user has installed Dropbox. *Id.* Users have unique email addresses to log into their accounts, and these email addresses serve as their identifier for the account. *Id.*

[2] MeWe is a free-access social networking website that allows users to share photographs, videos, documents, voice messages, and chats, among other media. Doc. No. 3-1 at PageID 9.

conduct. *Id.* Detective Hartwell discovered that MeWe Account 1 and MeWe Account 2 utilized the same IP address, and also that MeWe Account 2 used the same email address as the Dropbox Account. *Id.* at PageID 12. All three accounts used the same account name, Key Kovy. *Id.* Given all of this information, Detective Hartwell suspected that the same individual owned all three accounts. *Id.* at PageID 13.

Detective Hartwell identified Charter Communications as the Internet Service Provider for the IP address used to log into MeWe Account 1 and MeWe Account 2. *Id.* Detective Hartwell served a subpoena on Charter Communications requesting the subscriber information for this IP address. *Id.* Those records identified Defendant as the subscriber associated with the IP address, and the IP address was associated with Defendant's residence. *Id.* Charter Communications also identified the telephone number associated with the IP address, which was the same telephone number associated with MeWe Account 2. *Id.*

Detective Hartwell then identified AT&T as the service provider for said telephone number and served a subpoena on AT&T requesting the subscriber information. *Id.* The records received identified Defendant as the subscriber and Defendant's address as the one associated with the telephone number. *Id.*

On December 18, 2019, the Greene County Court of Common Pleas authorized several search warrants: (1) a search warrant for the Dropbox Account; (2) a search warrant for MeWe Account 1; (3) a search warrant for the email address key_kovy@yahoo.com; and (4) a search warrant for Defendant's residence ("Home Warrant"). *Id.* at 13-19.  On December 20, 2019, Judge Stephen A. Wolaver of the Greene County Court of Common Pleas authorized a search warrant for MeWe Account 2, and a phone warrant ("Phone Warrant") authorizing searches of the electronic devices seized at Defendant's residence.  *Id.*

Defendant contends that officers violated his rights under the Fourth Amendment in a multitude of ways.

## II.

The Fourth Amendment forbids "unreasonable searches and seizures" by the Government. U.S. Const. art. IV. "'It is well settled under the Fourth Amendment that a warrantless search is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions.'" *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020) (quoting *Morgan v. Fairfield Cty.*, 903 F.3d 553, 560–61 (6th Cir. 2018) (cleaned up)).

"The exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of an unlawful search." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)).

A defendant may assert a violation of the Fourth Amendment and seek suppression of evidence by filing a pretrial motion. *See* Fed. R. Crim. P. 12(b)(3)(C). The burden is on the defendant to show "a violation of some constitutional or statutory right justifying suppression.'" *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman,* 606 F.2d 673, 679 n.11 (6th Cir. 1979)).

### A. Validity of the Home Warrant and Phone Warrant

Defendant argues that both the Home and Phone Warrants were obtained in violation of the Fourth Amendment due to deficiencies in the supporting affidavits. Doc. No. 30 at PageID 177-79. Defendant contends: (1) the affidavits fail to establish the required nexus between the alleged criminal conduct and his residence; (2) the affidavits lack a date connected to the criminal activity that is close to the time the warrant issued; and (3) the affidavits were impermissibly overbroad and insufficiently particular. *Id.*; Doc. No. 46 at PageID 271-72. Defendant also argues

the Phone Warrant relied on evidence discovered during the execution of an allegedly deficient Home Warrant and, thus, the Phone Warrant is tainted as well. *Id.* The Government responds arguing that both search warrants fully complied with the Fourth Amendment because they were supported by detailed affidavits that established the requisite probable cause. Doc. No. 47 at PageID 283-84.

The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation…" U.S. Const. amend. IV. There is sufficient probable cause to justify the issuance of a search warrant where an affidavit contains facts that indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930) (6th Cir. 1990)). The probable cause determination depends on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

"The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009). The Fourth Amendment requires that the issuing judge have a "substantial basis" for finding that "a search would uncover evidence of wrongdoing." *Id.* (quoting *Gates*, 462 U.S. at 236, 238). An affidavit establishes probable case where the issuing judge finds that "given all the circumstances set forth in the affidavit… there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. A judicial officer's decision to issue a warrant "should be paid great deference." *United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018) (quoting *Gates*, 462 U.S. at 236).

1. **Nexus**

The Fourth Amendment requires that a search warrant describe with particularity "the place to be searched and the persons or things to be seized." *United States v. Brown*, 828 F.3d 375, 382

(6th Cir. 2016). "[T]he affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *Id.* That nexus can be inferred from "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams,* 544 F.3d 683, 687 (6th Cir.2008) (internal quotation marks and citations omitted). Whether an affidavit includes a proper nexus is a fact-intensive inquiry evaluated based on a totality of the circumstances test. *See Gates,* 462 U.S. at 238.

In the context of child pornography, "an affidavit including both information connecting the defendant to the offending username and information about where the defendant lived establishe[s] probable cause to search the defendant's residence." *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014). That inference is permitted in the child pornography context because these types of crimes are generally committed in a private place with high-speed Internet. *United States v. Lapsins*, 570 F.3d 758, 766 (6th Cir. 2009) (citing *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006)).

In this case, the affidavit for the Home Warrant states,

> ICAC investigators were able to link the Dropbox and MeWe accounts because both had the same username 'Key Kovy' associated with them… The MeWe account had a telephone number associated to it… ICAC investigators checked the phone number through TLO[3] and it returned to Kevin Kovacs of [Defendant's address] … An email address listed for the user of the Dropbox account was listed as key_kovy@yahoo.com. According to TLO, that same email address was associated with Kevin Kovacs of [Defendant's address].

Doc. No. 45-1 at PageID 310. This affidavit connects Defendant's offending username (Key Kovy) and his offending email address (kev_kovy@yahoo.com) with the Defendant through his phone number and residence. *Id.* Additionally, the affidavit included information about where Defendant

---

[3] TLO is a website used for researching individuals, telephone numbers, email addresses, etc. Doc. No. 45-1 at PageID 310.

6

lived using the TLO website. *Id.* As the affidavit includes both information connecting Defendant to the offending username and information about where Defendant lived, there is a sufficient nexus between the alleged criminal activity and Defendant's residence to find probable cause to search the residence. *Elbe*, 774 F.3d at 890.

### 2. Temporal Reference

Defendant next asserts that "[b]ecause the affidavit… contained no temporal reference to illegal activity or conduct at the time the search warrant was issued, or further, within the several months preceding the issuance of the search warrant" the Court should suppress the Home Warrant for lacking probable cause. Doc. No. 46 at PageID 274.

In general, an affidavit in support of a search warrant "must allege 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *United States v. Paull,* 551 F.3d 516, 522 (6th Cir. 2009) (quoting *Sgro v. United States,* 287 U.S. 206, 210 (1932)). Due to the unique characteristics of child pornography crimes, "the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." *Id*. While drugs, for example, "are usually sold and consumed in a prompt fashion," child pornography images "can have an infinite life span." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009).

The Sixth Circuit Court of Appeals frequently rejects temporal challenges to evidence obtained many months before the issuance of a warrant based on probable cause of child pornography. *See Frechette,* 583 F.3d at 377–79 (reversing suppression of evidence that defendant purchased subscription to child pornography website sixteen months before execution of warrant); *United States v. Hampton,* 504 F. App'x 402, 404-05 (6th Cir. 2012) (affirming denial of a motion to suppress evidence where affidavit stated that defendant had offered an image of child pornography on a file-sharing network ten months before warrant's approval); *United States v.*

7

*Gillman,* 432 F. App'x 513, 515-16 (6th Cir. 2011) (affirming denial of a motion to suppress evidence where affidavit stated that defendant had offered video of child pornography on file-sharing network five months before the warrant was issued); *United States v. Lewis,* 605 F.3d 395, 402 (6th Cir. 2010) (holding that probable cause existed based on affidavit alleging that defendant had sent image to law enforcement agent seven months before warrant application).

In this case, the affidavit states, "[t]he last known access to the MeWe account from Kovac's IP address was on 09/06/2019.  MeWe provided ICAC investigators with three screenshot[s] from the suspect account[,]" which contained suspected child pornography.  Doc. No. 45-1 at PageID 312. The Home Warrant issued on December 18, 2019, a mere two months after the latest suspected criminal activity. *Id*.  While it is true that Dropbox initially sent a complaint into NCMEC regarding Defendant's activities in 2017, MeWe's September 2019 report -- stating that Defendant's IP address was being used to log into a MeWe account containing suspected child pornography -- provides a temporal reference to the illegal activity at the time the search warrant issued.  *See Frechette,* 583 F.3d at 377–79.  Thus, there was probable cause to issue the warrant at that time.

### 3. Overbroad

Defendant further argues that the affidavit was impermissibly overbroad and insufficiently particular.  Doc. No. 46 at PageID 274-77.  Defendant asserts, "it is unproven how or when the incriminating images became associated with the defendant[']s account" and "[t]he Government does not enable the Court to make a finding of probable cause when it is not ascertainable as to whether illegal images were uploaded, passively viewed on a post where they were already uploaded, or received the atemporal image evidence without provocation on the MeWe server."  Doc. No. 46 at PageID 274-75.  However, Defendant's characterization of the requirements for probable cause does not line up with the Sixth Circuit's standards.

The Sixth Circuit has "repeatedly held that visiting or subscribing to a website containing child pornography creates a reasonable inference that the user has stored child pornography on their computer." *United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018) (citing *Wagers*, 452 F.3d at 538–40); *Frechette*, 583 F.3d at 379; *United States v. Kinison*, 710 F.3d 678, 683–84 (6th Cir. 2013); *Elbe*, 774 F.3d at 889 (discussing file exchanges on a peer-to-peer website). Even if a website contains both legal and illegal material, that will not automatically negate probable cause. *Tagg*, 886 F.3d at 586; *Wagers*, 452 F.3d at 538–39.

In this case, the affidavit states that Defendant's Dropbox account contained images and videos of child pornography. Doc. No. 45-1 at PageID 311-12. The affidavit also states that Defendant's MeWe account contained images suspected to be child pornography, noting, "Dr. K. Liker, Chief of the Child Advocacy Division at Dayton Children's Hospital… advised there is a strong possibility the females are under 18 years of age." *Id*. at 312. Defendant's IP address was used to access the MeWe account on September 6, 2019. *Id*. Therefore, there is evidence that Defendant visited websites containing child pornography, creating the reasonable inference that Defendant stored child pornography on his computer. *Tagg*, 886 F.3d at 586. Regardless of how the images and videos of child pornography became associated with Defendant's account, the affidavit includes evidence that Defendant accessed the websites containing illegal images, creating probable cause to search Defendant's residence. *See id*.

### 4. Phone Warrant

Defendant also asserts that the search warrant for his cell phones violated the Fourth Amendment for the same reasons articulated in reference to the Home Warrant. The Government contends that the Phone Warrant complied with the Fourth Amendment because it was fully supported by a detailed affidavit prepared by Detective Hartwell that established the predicate probable cause. Doc. No. 47 at PageID 283-84.

As addressed in Part II.A.1-3, the Court finds the affidavit attached to the search warrant contained probable cause to search the home. *See supra* Part II.A.1-3. Because the affidavit attached to the Phone Warrant (issued after the search warrant for Defendant's residence) contained even more probative factual information than the affidavit attached to the Home Warrant, the Court finds that there was probable cause to search Defendant's phones. *See* Doc. No. 45-2.

### B. Prompt Filing Requirements of O.R.C. § 2933.241

Defendant additionally contends that neither the Home Warrant nor the Phone Warrant were properly filed with the Greene County Court of Common Pleas as required by Ohio Rev. Code § 2933.241,[4] *et seq.*, and Ohio R. Crim P. 41. Doc. No. 30 at PageID 179-80. The Government counters that both search warrants complied with the requirements of Ohio Rev. Code § 2933.21 and, additionally, that failure to comply with state procedural requirements is of no legal consequence in a federal criminal proceeding. Doc. No. 47 at PageID 285-86.

The government's argument is well-taken because "the failure to make a prompt return and to verify the inventory in [a case has] no relation at all to the command of the Fourth Amendment which bars unreasonable searches and seizures." *United States v. Dudek*, 530 F.2d 684, 691 (6th Cir. 1976). Filing a search warrant is a "ministerial act" and "a state police department's failure to abide by this state procedural rule does not implicate the Fourth Amendment." *United States v. Mack*, No. 1:13-CR-278, 2014 WL 356504, at *4 (N.D. Ohio Jan. 31, 2014), *aff'd*, 808 F.3d 1074 (6th Cir. 2015) (citing *Dudek*, F.2d at 691).

---

[4] Defendant cites to Ohio Rev. Code § 2933.21 as the statute at issue, which relates to the *issuing* of search warrants, Defendant argues, however, that neither search warrant was properly *filed* as required by law. The filing requirements for warrants are governed by Ohio Rev. Code § 2933.241, so the Court infers that Defendant is challenging the alleged failure to comply with that provision here. See Doc. No. 30 at PageID 179-80.

Because the alleged failure to promptly file the search warrants in this case does not implicate the Fourth Amendment, the Court will not invalidate the search warrant on this ground. *See Dudek*, 530 F.2d at 691; *see also United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971) (ruling that the filing of a warrant return was a "ministerial" act that, absent a showing of prejudice, did not otherwise void the warrant); *Evans v. United States*, 242 F.2d 534, 536 (6th Cir. 1957) (same).

Assuming, *arguendo*, that Ohio statutory provisions apply here, Ohio law was not violated. Pursuant to Ohio Rev. Code. § 2933.241: "The [search warrant] return shall be made promptly and shall be accompanies by a written inventory of any property taken." Ohio R. Crim. P. 41(E) provides: "The law enforcement officer shall attach to the warrant a copy of the return, inventory, and all other papers in connection therewith and shall file them with the clerk or the judge, if the warrant so requires."  In this case, Detective Hartwell filed the Home Warrant 27 days after its initial execution on December 19, 2019, and filed the Phone Warrant 4½ months after its initial execution on the same date in December.  Doc. No. 45 at PageID 236-40.  Detective Hartwell testified that both search warrant returns were filed promptly after investigators completed all forensic analysis of the items found in the home and on the phone. *Id*.

Defendant cites no case law supporting his assertion that a search warrant should be invalidated when it is not promptly filed. Instead, Defendant cites to an Ohio Court of Appeals case where the court simply noted that the failure to file the papers with the clerk was a facial violation of Ohio R.Crim. P. 41(E), but ultimately upheld the warrant on other grounds. *City of Columbus v. Wright*, 48 Ohio App. 3d 107, 111 (1988). Defendant also fails to cite to any case law interpreting the word "promptly," as used in § 2933.241, or suggesting that the return of the

warrants in this case was not prompt. Therefore, the officers complied with Ohio law when filing the search warrants.

### C. Jurisdiction of the Authorizing Judge

Finally, Defendant argues that the search warrant for the iPhone was executed outside its authorized jurisdiction and that, as a result, all evidence that came from the iPhone must be suppressed. Doc. No. 46 at PageID 268-71. Specifically, Defendant argues that the warrant signed by Judge Wolaver of the Greene County Court of Common Pleas did not allow Detective Robert Bell to search the phone in Montgomery County, Ohio or the FBI to search the phone in Quantico, Virginia. *Id*. The Government responds that the FBI properly relied upon the Phone Warrant to search the iPhone because federal officers may rely on a state warrant to conduct a follow-up search of a previously seized cell phone. Doc. No. 47 at PageID 287-88.

Federal Rule of Criminal Procedure 41(e)(2)(B) provides:

> A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(a) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

Under Fed. R. Crim. P. 41, "an execution period specified in a warrant applies to the time to seize the device or conduct on-site copying of information from the device. This deadline does not apply to the time to analyze and investigate the contents of the device off-site." *United States v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018).

Defendant recognizes that the search warrant authorized law enforcement to execute the search warrant in Greene County, and that the iPhone at issue was seized within Greene County. Doc. No. 46 at PageID 268. However, Defendant argues that a judicial officer in one district is generally without authority to issue a search warrant for property in another district, and that the

12

removal of property from one district to another to obtain a certain judicial officer or perceived result is improper. Doc. No. 46 at PageID 269 (citing *United States v. Bailey*, 191 F.Supp.2d 1044, 1051 (S.D. Ohio 2002)). While both of these statements are generally correct, they do not describe the circumstances of this case.

In this case, Judge Wolaver authorized the search of Defendant's residence located in Greene County. Doc. No. 45 at PageID 232. While searching the residence, investigators seized computers, cell phones, tablets, and portable storage devices. *Id*. at 236. The cell phones, along with the other evidence seized, were held in the property room at the Fairborn Police Department (located in Greene County). *Id*. at 237. Detective Hartwell testified that the cell phones seized at the residence served as the basis for a follow-up search warrant. *Id*. at 236; Doc. No. 45-2. Detective Hartwell obtained a second search warrant, authorized by Judge Wolaver, allowing officers to search the contents of the phones for evidence related to the charged offenses. *Id*. at 236-37.

After that search warrant issued, the phones were taken from the property room at the Fairborn Police Department and were transported to a forensic examiner -- Detective Robert Bell with the West Carrollton, Ohio Police Department (located in Montgomery County). *Id*. at 237-38. Detective Bell then conducted his forensic examination. *Id*. Soon after, the FBI became involved with the case, and sent the phones to the FBI lab in Quantico, Virginia for additional extraction. *Id*. at 238.

The Fourth Amendment allows officers to move phones from the Fairborn Police Department to the West Carrollton Police Department in Montgomery County, as officers may conduct a more detailed search of an electronic device after it is properly seized as long as the later search does not exceed the probable cause located within the original warrant. *United States v.*

*Evers*, 669 F.3d 645, 650-52 (6th Cir. 2012). Here, the phones were moved to Montgomery County for a forensic analysis to locate evidence of the exact same charges articulated in the search warrant -- child exploitation and child pornography. Doc. No. 45 at PageID 243-46; Doc. No. 45-1. Additionally, analyzing the contents of a properly seized device outside the territorial location of a search warrant is a common practice, as many counties lack the necessary and appropriate equipment for analyzing the devices. *See United States v. Bailey*, 193 F.Supp. 2d 1044, 1051 (S.D. Ohio 2002) ("federal law enforcement officials should be able to seek crime detection services which are quickly available, even though located in another judicial district"); *see also United States. v. Saunders*, No. 5:16-CR-21, 2017 WL 1234148, at *3 (N.D.W. Va. Mar. 3, 2017) (holding that the search of a cell phone -- seized in the authorizing judge's county, but searched outside that judge's county -- was not improper). Thus, there was nothing improper about sending the phones to the West Carrollton Police Department for forensic analysis.

Additionally, sending the phones to the FBI's lab in Quantico, Virginia was also appropriate under the Fourth Amendment because federal officers may assist state officials searching for evidence pursuant to a state search warrant as long as they are searching for the same type of evidence authorized in that warrant. *See United States v. Garcia*, 496 F.3d 495, 509-10 (6th Cir. 2007). In practical terms, this means "federal officers may use a state warrant to conduct a follow-up search of a seized cell phone without obtaining a second warrant so long as the search does not exceed the probable cause articulated in the original warrant." *United States v. Castro*, 881 F.3d 961, 967 (6th Cir. 2018). Here, the Phone Warrant was specifically issued in support of a state criminal investigation into alleged pandering of sexually oriented materials involving minors, and obscenity involving minors, as well as the illegal use of a minor in nudity-oriented material. *See* Ohio Rev. Code §§ 2907.321 -23. The investigation into these state offenses mirrors

14

the federal child pornography charges outlined in Defendant's federal indictment. Doc. No. 23. Therefore, the FBI properly relied on the Phone Warrant when it conducted further forensic analysis on Defendant's iPhone in Quantico, Virginia.

This sequence of events evidences that the search warrants were properly executed when investigators seized the cell phones from Defendant's home in Greene County, based on the authorization of the Greene County Court of Common Pleas. *United States v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018) ("Execution of the warrant occurred when the cell phone was removed from its location and shipped to the analytics laboratory – an act that occurred prior to the warrant's deadline. It is not relevant for compliance with that deadline that the subsequent extraction occurred after the warrant's execution date"). While the contents of the phones were investigated off-site, this has no bearing on the conclusion the search warrants were properly executed in Greene County. *Id.* Therefore, the government complied with the Fourth Amendment when they seized and searched the iPhones.

### III.

For all the above reasons, Defendant's Motion to Suppress (doc. no. 30) is **DENIED**.

**IT IS SO ORDERED.**

August 9, 2021                                                  s/Michael J. Newman
                                                                Hon. Michael J. Newman
                                                                United States District Judge